Case on the docket, case number 5, section 12-0567-WC, Anthony Mossa v. Workers' Compensation. Good afternoon. May it please the court, counsel. Attorney Patrick Giannetta on behalf of the appellant, Nascode Industries. This case obviously has a lot of issues up in front of the court today. The most important one, though, the ultimate underlying issue is whether or not the decision entered by the Illinois Workers' Compensation Commission was against the manifest weight of the evidence. The case is obviously tried with an arbitration decision held in favor of Nascode Industries by the arbitrator. Three commissioners affirmed that. Thereafter, the circuit court reversed the commission, and on its own, word and order, finding its own facts, reversing the decision of the commission as against the manifest weight of the evidence. In doing so, their basis was to say that the independent medical evaluation done by Dr. Richard Lehman was against the manifest weight of the evidence. Obviously, a doctor's opinions can't be against the weight of the evidence. The opinions and facts are weighed by the commission, and to hold that the doctor's opinions in and of themselves are against the manifest weight of the evidence is improper. Well, the claimant had had five surgeries, and some of those were by prior employer IMEs. Correct. And Dr. Lehman's opinion was against those five. I don't know that it was against those five. He said that he would not have necessarily done them, but the commission decision ultimately said that those five surgeries were reasonable and necessary. So I think the commission took that into consideration, and they said, listen, these surgeries are reasonable and necessary. And they were paid for by the respondent. But the current issue is, what's his condition now at the time of hearing? And after those five surgeries, the petitioner was able to do things like water ski. And I know I'm not able to water ski. I can't pull myself up. But Dr. Lehman testified that that exceeds the restrictions that Dr. Emanuel put in place. Three years later, Dr. Lehman said this gentleman had a bursitis. It's very specific to extensive repetitive motion done within six months prior to that examination. Those all came into evidence that were taken into consideration by the commission, wherein the commission said, this gentleman's obviously been very active. He can do things like ride an ATV. He can water ski, which takes extreme shoulder strength to do. He can clearly work and do things, as Dr. Lehman says, at a full-duty work restriction. So it was within the parameters of the commission, and the commission alone, to look at the facts and say, Dr. Emanuel had these restrictions at the end of the treatment. And then three years later, Dr. Lehman looked at this gentleman and said that he could work full duty. I think the only way to discount that is to say that Dr. Lehman is somehow completely and totally disqualified to make those opinions, which was never introduced into evidence whatsoever. Dr. Lehman was shown to be a board-certified orthopedic surgeon specializing in sports medicine who does all the surgeries except for one that were performed upon the petitioner. And Dr. Lehman took... Well, Dr. Lehman testified that he'd only suffered a strain to his shoulder, despite the fact that he had five surgeries. Correct, and Dr. Lehman looked at the surgical findings and said that the surgical findings were minimal, that they were very, very minimal at best, and looked at the actual surgical photographs and reviewed all of them, and said that the findings on surgical examination were not that great. And he was a qualified expert to make those decisions, and the commission took that into consideration. Was he the employer's third IME? Correct, and as I put in my brief... The other two had been adopted as treating physicians. Correct, so at that point, they're impossible for the employer to go back to those two doctors to use them again. So if the employer wants to get the employee reevaluated, they have to go to a new doctor under Section 12. Or they could accept what their previous IME said and became a treating physician. Correct. Or they can keep looking for somebody who gives a different opinion. Well, I mean, whenever you hear about somebody who's doing activities such as water skiing, it makes you wonder what they're doing and whether or not those activities exceed the restrictions that were put in place by Dr. Emanuel. At that point in time, I think it's reasonable and prudent for the employer to say, can this gentleman do full-duty activities, which is what the company did here. It was introduced, and the commission looked at it and said, yeah, you're right. This gentleman can do these activities. He can clearly work full duty. And these sorts of activities greatly exceed the 75-pound restrictions, and that's just... Obviously, the restrictions were a lot different than that. When put into place by Dr. Emanuel. And, you know, the other option would have been then to say, well, the petitioner could have been reevaluated by Dr. Emanuel, but here we are three years after the date with Dr. Emanuel. We have the petitioner evaluated by Dr. Lehman. And Dr. Lehman says, look, not only is this guy able to do water sports like water skiing and ride ATVs, but on physical examination, he has a very specific type of bursitis that only comes about with hyper-repetitive motion and stressors on the shoulder, something that you see typically with swimmers. The next issue is that the order entered by Judge Hatch exceeds the authority granted by the circuit court under Section 19F2 of the War Compact. Judge Hatch entered his own decision and made his own factual findings, because it, again, goes back to the very crux of the argument in this case. The commission made factual findings, and that's within the province of the commission. It's within the province of the commission to weigh the evidence. Just because you don't think that Dr. Lehman's opinions are correct in your own mind doesn't mean that the commission can't assert that it is, and the commission can't rely upon that, which they did. And, again, to find a doctor's opinions against the manifest weight of the evidence is not the proper legal argument. The argument is whether or not the decision of the commission is against the manifest weight of the evidence, and whether or not the commission had reasonable facts to base their opinions upon or their decision upon, and in this case, like I said, unless you completely discredit Dr. Lehman and say he's not qualified to make those opinions, I don't know how you make that leap. And in making these factual findings, I did a motion, obviously, to remand back to the circuit court, because Judge Hatch rendered this order without looking at 391 pages of the transcript, which Judge Hatch, frankly, never looked at the IME reports or testimony of Dr. Lehman, but found them against the manifest weight of the evidence. I don't think Judge Hatch had the opportunity to even review the transcript of the testimony of the parties at the time of trial, which was one of the reasons why I asked to have this sent back to the circuit court, to have further determinations to have the circuit court re-review the evidence, and all the evidence, including all the exhibits presented in testimony at the time of trial,  Let me ask you a related question, shift gears for a second. Obviously, we'll hear from your opponent, but if we were to reject the commission's finding, and by implication, Lehman's opinion, is there another way that the claimant could be covered? If you were to reject? Right. The commission's finding, could the claimant then say, well, he's partially incapacitated from proving or working as usual in ordinary occupation? Correct. And that gets to the next argument. I mean, the proof at the time of trial that the petitioner didn't prove a wage differential. The jobs he was looking for at the time of trial were the same jobs that he had working at NASCO, that of maintenance mechanic. Is that the question you're asking? Well, yeah, you're on the right track. How narrowly or broadly do we construe the term usual and customary line of employment? Well, I think that it's pretty clear. Partially incapacitated from pursuing his usual and customary line of employment. This gentleman's a maintenance mechanic. Yes. Nothing in the statute says that you just have to have an impairment of earnings. You also have to be, and the case law says this too, you also have to have a loss of occupation in this. Well, that's precisely my question. Does the term mean the precise job activities that he was performing at the time of injuries, or is it just a category? You can see there could be an issue there, right? Well, sure, and obviously it's broad to take into account. But the jobs that he was looking for were very narrow, maintenance mechanic. And he was looking for jobs doing maintenance mechanic work similar to that which he did at NASCO Industries. And he testified to that at the time of trial. He said, yes, I'm looking for jobs as a maintenance mechanic. So, in other words, in fact, he almost got a job, I think, with Casey's General Store as a maintenance mechanic prior to trial. Are you familiar with the first assist case, the case of the nurse versus the operating room nurse? No. Oh, okay. Well, you should be, but... Okay. I'm sorry. But I think that the, I mean, the petitioner in this case testified he was working for a maintenance mechanic at the time of the injury. And then you can go back even further and say, petitioner's job, had he not been fired, was available to him. And Dr. Lehman testified to that, that the restrictions that were in place met his job description. The same job he was doing before? Correct. Because there was a change in jobs. And that's in the testimony. Joel Kovas, his supervisor, came in and testified and said, listen, this job was a heavier job description, but we brought in a lift for the really heavy lifting requirements, and it changed the lifting requirements for the job. Therefore, he would have been a match. And had he not stolen from NASCO Industries, and had he not been found guilty and charged with a federal crime of stealing, then he would have gone back to his job with NASCO Industries. So, again, he doesn't fall under AD-1 because he would have gone back to his previous occupation had he not been terminated. Was he convicted of that crime? Yes. So on the record, he was, was he not? Yes, he was. And the petitioner agrees that the jobs he was looking for, and that's on page, I think, 1025 of the transcript, the jobs that he was looking for were similar to the job that he performed with the respondent. So it wasn't the exact same job with the respondent, but we have two different things here. We have one that the supervisor and Dr. Lehman stating, yes, this job is similar, well, I'm sorry, this job could have been performed with restrictions in place by Dr. Emanuel with the changes made, with the lifting restrictions lessened. And also, secondly, that he was also looking for jobs as a maintenance mechanic that were similar to those jobs that he was performing while he was working with NASCOT Industries. What about the exclusion of the claimant's exhibit? What's your position on that? Exhibit 3? I think that from the perspective of respondents and employers everywhere, if we didn't have to take depositions of IMEs, it would probably be pretty easy. But I think that that's pretty clear that I think that it's more than just getting a certified copy of an IME report. If counsel's correct, then defense attorneys would never have to take depositions again, and we'd all get these reports certified and just introduce them into evidence. So I don't believe that that, and I think that there is a case on point as well. Are there any other questions? Thank you. Thank you, counsel. Good afternoon. Thanks for the report. Counsel? Yeah, we're here on the arbitrator had found that petitioner suffered a work-related injury, that that work-related injury was causally with causation. The arbitrator also found that all five surgeries were both reasonable and necessary, and he then awarded 55% of an arm. Petitioner appealed that based upon the fact that he could not return to his usual customary employment, and he also proved an impairment of earnings, so he met the two tests to show that he should be getting an award under 8D1. When you read the arbitrator's decision, and the commission affirmed without discussion, it's not exactly clear what specifically they are relying upon to find he was not a candidate for 8D1. There's a few notes in there. I've addressed those in my brief, but I think that realistically we can get to the brass tacks of this, and that is that Dr. Lehman had issued a full-duty release. Here today I hear from the respondent that, in effect, three years after Dr. Emanuel's NMI release and four months before we're scheduled to go to trial, they just wanted to get an update on whether or not Dr. Emanuel's restrictions were still valid, and therefore they sent him to Dr. Lehman for that opinion. They had heard maybe there were some activities that the petitioner was doing, so let's just get an update right before trial and see how these restrictions are. Of course, we couldn't send him back to Emanuel, our prior doctor, so we'll go out and get Dr. Lehman. The interesting part I will say about that is, if that's what they were really intending to do, why didn't they send her to have a functional capacity evaluation? After all, Dr. Emanuel's restrictions that he placed on the petitioner at NMI in July of 2008 were based upon a functional capacity evaluation, and the fact is that the petitioner did have five surgeries that the commission found were reasonable and necessary, and although Dr. Lehman testified, I wouldn't have done those surgeries, at no point, even when pressed, would he go to say that they were not reasonable and necessary. So does the timing leave you feeling like you were somehow sandbagged or something? Is that what you're alluding to? Not so much a sandbag as far as the timing, but yes, that they were coming in late with another IME after this time, yes, and that they weren't really coming in with the notion of, hey, listen, a lot of time has gone by, and we've gone through a long period of vocational rehab, which incidentally the respondent provided that vocational rehab right up until the IME. At the time, I was thinking they just wanted to cut him off of vocational rehab. We're tired of this. But having said that, the way that they, again, I will just simply say, is they could have had a functional capacity evaluation done, and perhaps we would have had something different than we have. Setting the issue aside, I don't know if you feel like you're sort of in deja vu, but we had the long convo this morning, and again, you know, you're going to be asked, why couldn't they have adopted Lehman's opinion? Well, I thought about what happened this morning. That was good. I want to bring up a couple of points. Number one is I want to bring up is that when we talk about evaluating the commission as to whether or not they could adopt one doctor's opinion over another doctor's opinion, we're really not saying whether the doctor's opinion is against the manifest right of the evidence. We need to look at what the commission did and the reasoning that they set forth for adopting that particular doctor's opinion. In this particular case, we have one, we have several, we've got five surgeries and two separate doctor's opinions that go against Dr. Lehman. And the commission, no fewer than three or maybe even four times, indicated that Dr. Lehman's opinions were unrebutted. And I will simply say is I don't view rebuttal in a linear chronological fashion, meaning Dr. Lehman was the first one to get a crack at things here, and therefore it has not been rebutted. That's not how it works. Dr. Lehman's opinions were rebutted quite handily by all the other evidence in this case. Well, let me ask this candidly. Wasn't there some evidentiary support in the record for Lehman's opinion? I mean, didn't he base it in part upon his physical examination of the claimant? Didn't he say he discovered the claimant suffered from a condition that is present only in persons who have very current active stressors in their lives in terms of physical activity? So, I mean, didn't he testify to that? He did. He testified to that. He did his usual and customary IME. The guy came in probably there about 20 minutes. He did the physical exam, took a history, looked at a bunch of medical records and drew some conclusions of his own. But, again, the important conclusion he drew, frankly, he didn't disagree with hardly anything that any of the other doctors said except this full-duty release. And, again, there's no functional capacity evaluation for Dr. Lehman to have relied upon. Okay, let's go to the next issue. Let's assume for the sake of the argument that we would be at some point receptive to the argument that the commission got it wrong on the manifest weight issue. What about what happens then on this usual and customary? Is there an issue there? I don't think so because in this particular case, when the circuit court ruled, reversed the commission and ruled in our favor, he actually made, he decided everything that the petitioner was awarded. He said he's an 8D1. He put the dollar amount in there. He awarded the maintenance. That had been terminated because of the conclusion, you know. And also the medical bill. He decided all issues in his final order. And so in this case, there's no remand. I don't think that it would be necessary for this court to remand. This court simply affirms the circuit court, and that's that. One other thing I want to point out is that there's a couple of things in the record here that just need to be brought up. Dr. Lehman himself testified that, oh, yeah, I saw Dr. Emanuel's restrictions, and even with Dr. Emanuel's restrictions, this person could go back to his work at NASCO. That is patently false. In addition to that, Joel Colvis, who testified that, well, he testified that the job had changed from the time the petitioner had worked there to the time we were at trial. And counsel referred to that this afternoon. But Respondents Exhibit 8 had the old job description and the new job description, and they were both rated as heavy. So, again, the notion that the petitioner could go back to his job at NASCO is simply patently false, and that's one of the big problems with what Lehman said. I mean, there's just no getting around that. Is there any testimony in the record about how often Dr. Lehman testifies as a defense expert as opposed to the petitioner's expert, any of that kind of credibility stuff? No. No, I did not address that with him in his testimony. June Blaine, the vocational expert, testified that the petitioner did a fantastic job of looking for a job. I mean, all the things that I think we couldn't have had a better job search in his cooperation and his diligence. She also testified, both him and her, testified that even at the time of trial, they would have liked to continue to work with one another. June Blaine also testified about whether or not Mr. Ramosa could return to work at some jobs, and Ms. Blaine testified as to what his impairment of earnings are. So that's all solidly in the record, and I thank you. Thank you, Counsel. Counsel, you may reply. Briefly, Counsel brought up having a functional capacity evaluation. I think that there's case law in point in that, that the respondent can't order a petitioner to undergo an FCE because that's medical treatment. He's arguing, again, going into factual issues that these things should have been done instead of the employer getting another independent medical evaluation under Section 12. Similar, prior to trial, the petitioner could have gone back to Dr. Emanuel to revisit the restrictions, to revisit the issues brought up by Dr. Lehman, and that was not done. There was no testimony in this case offered by Dr. Emanuel in this case, or of Dr. Emanuel offered by a petitioner in this case. So there are a lot of evidentiary things that could have been done, and I think that that's kind of all speculative. The only issue is what evidence did the Commission have to rely upon with their decision, and are the factual findings against the manifest way to the evidence? I think the answer is, quite frankly, no. Unrebutted was used in the decision when referring to Dr. Lehman, and I think that that references to the prosidus that Dr. Lehman found where he said that the petitioner had clearly been active with the shoulder within the past six months prior to the examination, which goes back to the three-year gap between the time that the petitioner had been seen by Dr. Emanuel and the time that he was seen by Dr. Lehman. That was clearly, that six-month time frame was well after a point that he had been released with permanent restrictions, and Dr. Lehman is saying, listen, this guy is using his shoulder quite extensively, and I found a prosidus as proof of that, and that was unrebutted. There was no evidence offered by the petitioner to state otherwise. Thank you. Thank you, Counsel Bowles. This matter will be taken under advisement, and a written disposition, shall we?